### JAMES *v.* THE CITY OF SAN FRANCISCO.

The obligation of a municipal corporation to keep the streets in repair, is necessarily suspended while they are actually undergoing such alterations as, for the time, made them dangerous.

When the law compels the corporation to give out a contract for grading a street to the lowest bidder, it takes away from the corporation the responsibility arising from the acts of the person taking the contract.

It follows that where a party was injured by falling at night into an excavation made in grading the street of a city under such a contract, owing to the failure to put lights or guards about the place, the contractor, and not the city, is liable.

APPEAL from the District Court of the Twelfth Judicial District.

This was an action brought against the City of San Francisco, for

James v. San Francisco.

damages for injuries sustained by plaintiff in falling into the excavation caused by grading Clay street, near Powell, in the city of San Francisco.

The plaintiff alleged the serious injury sustained by him by falling into the excavation made in grading the street, and that the accident occurred in a dark night, there being no light nor railing placed on the spot to prevent foot passengers from falling into the chasm made in the street, which was about twenty feet deep.     The defendant demurred to the complaint on the ground that it did not show any cause of action against the defendant.     The demurrer being overruled by the Court below, defendant answered.

On trial plaintiff established the allegations of his complaint, and defendant proved that the contract to grade the street in question was given to the lowest bidder, as required by law, and that the accident to plaintiff occurred during the progress of the work.

Judgment was rendered in the court below for $5,000 against defendant, who moved for a new trial, which was overruled, and defendant appealed.

*Wm. Duer* for Appellant.

1. To render a municipal corporation liable for a non-feasance, it is requisite that a duty should be imposed upon it by law.     Handy *v.* The Mayor of Lyme Regis, 5 Bing. 91; Hicock *v.* Trustees of Plattsburg, 15 Barb., 434, and authorities there cited; and see dissenting opinion of Sandford, 5 Sand. S. C. R., 297; 3 La. Ann. Rep., 646, per Eastes, C. J.

2. The charter of the City of San Francisco confers upon the Common Council a discretionary legislative power, to open and improve streets, but imposes upon them no duty to do so.     See Act to reincorporate San Francisco, Art. 3, § 13; Art. 1, § 1; Art. 2, § 4; Art. 3, § 3; Art. 3, § 12; Art. 5, § 2.

3. If an obligation or duty be imposed, yet the city is not liable to a private civil action at the suit of an individual.     2 Hill S. C. R., 371; 3 Peters, 409; see opinion of Sandford, 5 Sand. S. C. R., 319; 2d, 322.

4. The obligation of the city to keep the streets in repair is necessarily suspended while they are undergoing repairs and alterations of a character which render them, for the time being, dangerous and impassable, and this applies as well to the sidewalks.

5. The fault, if anywhere, was in the contractors, and the city is not liable for their negligence.     Blake *v.* Ferris, 1 Selden, p. 48; Bach *v.* The Mayor etc., 4 Seld., 222; Kelly *v.* The Mayor etc., 1 Kernan, 432.

*Manchester & Hodges* for Respondent.

The city is not charged with any misuser or non-user of its "legislative power," neither does the opening or not opening, the improvement or non-improvement of streets, in any manner enter into the gravamen of the plaintiff's action.     The legislative power of the city was exhausted

by passing an ordinance that Clay street should be opened as a public thoroughfare; its executive power was exhausted in opening the street under the ordinance. All that remained for the city to do thereafter, was to perform the purely ministerial duty of keeping in repair the thoroughfare it had created.

The existence of this duty is deduced from the fact that the charter, (Comp. Laws, p. 948, § 13,) confers upon the city power to keep the streets in repair. That power is not a prerogative but a trust; duty is its correlative term. That duty, however it may be owing to the public, is also due to the individual citizen, and if he sustain special damages from a neglect of it, he may have his action to recover such damages.

This principle is established by the leading cases. Henly v. The Mayor of Lyme Regis, 15 Com. Law, 486; Mayor of N. Y. v. Farzee, 3 Hill, 612, (615 a); People v. City of Albany, 11 Wend., 539; Hudson v. the City of N. Y., 5 Sand., 289; Rochester White Lead Co. v. City of Rochester, 3 Comst., 463.

However the general obligation may have been qualified by reason of the grading, it still remained true that the city was bound to make use of reasonable and proper precautions to secure the citizens against the dangers to which they were exposed by the condition of the streets while so under repair. See Willard v. Newbury, 22 Vt., 458; Carrier v. Lowell, 16 Pick., 170.

Mr. Justice TERRY delivered the opinion of the Court. Mr. Chief Justice MURRAY concurred.

The obligation of a municipal corporation to keep the streets in repair is necessarily suspended while they are actually undergoing such alterations as, for the time, render them impassable or dangerous.

At the time of the injury complained of, the street was being graded by one Babcock, under a contract with defendant, and the character of the work necessarily rendered said street unfit for a public thoroughfare, and this fact was a matter of general notoriety.

It is said that the contract of Babcock only related to the carriage way of the street, extending from one sidewalk to the other, and that the obligation of the city to keep the sidewalk in repair was not suspended because repairs or alterations were being made in the carriage way.

The Common Council, by ordinance, required the owners of property along the line of improvement, to grade the sidewalks, and the alteration of the whole street was progressing at the same time. The defendant had no control over the workmen employed, and, as the law requires all such contracts to be given out to the lowest bidder, could not even select the contractor.

It is a well settled rule that "Whenever a person is absolutely compellable, by law, to employ a particular individual in a given matter, the law which compels him to employ that individual, takes away his responsibility arising from the acts of that individual. Story on Agency, § 456.

For any injuries, arising from negligence in the manner of conducting the work, we are of opinion that the liability rests upon the contractors, and not upon the city. Reedy v. London and N. W. Railway, 4 Welsby H. and G. Exchequer R., 243.

Judgment reversed.